# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **MARIO QUINTANILLA, SID #04570071,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **SA-20-CV-00927-XR** |
| **CORRECTIONAL OFFICER** | § | |
| **LUIS ARAIZA, Atascosa County** | § | |
| **Jail; CORPORAL KENNETH DELEON,** | § | |
| **Atascosa County Jail; SERGEANT** | § | |
| **CATHRYN PRATKA, Atascosa County** | § | |
| **Jail; and ATASCOSA COUNTY SHERIFF** | § | |
| **DAVID SOWARD,**[1] | § | |
| | § | |
| **Defendants.** | § | |

## ORDER

Before the Court are Plaintiff Mario Quintanilla's 42 U.S.C. § 1983 Amended Civil Rights Complaint, Defendants' Motion to Dismiss Plaintiff's Amended Complaint, Plaintiff's Response to Defendants' Motion to Dismiss, and Defendants' Reply in Support of Their Motion to Dismiss Plaintiff's Amended Complaint. (ECF Nos. 10, 12, 14, 15). Upon review, Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. (ECF No. 12).

## BACKGROUND

According to Atascosa County court records, Quintanilla was indicted in February 2020 for the offense of manufacturing and delivering a controlled substance. He is currently confined in the Atascosa County Jail ("ACJ") awaiting trial. While confined, Quintanilla filed this section

---

[1] In his Amended Complaint, Plaintiff Mario Quintanilla failed to identify three of the four named defendants by their full names. (ECF No. 10). When Defendants filed their motion to dismiss, they provided full names for these defendants. (ECF No. 12). Additionally, Defendants advised that Defendant Sergeant Cathryn Jalie is now known as Sergeant Cathryn Pratka. (*Id.*). The Court will refer to this defendant by her current name. The Clerk of Court is directed to change the style of the case to reflect the full names of these defendants as set out in the style of this Order.

1983 action against Atascosa County Sheriff David Soward ("the Sheriff") and three correctional officers from the ACJ: Correctional Officer Araiza ("CO Araiza"), Corporal Kenneth DeLeon ("Corporal DeLeon"), and Sergeant Cathryn Pratka ("Sergeant Pratka"). (ECF No. 10). Quintanilla claims Defendants violated his rights under the Fifth and Fourteenth Amendments. (ECF No. 14).

As to CO Araiza and Corporal DeLeon, Quintanilla contends they violated his constitutional rights when they employed excessive force against him. (*Id.*). More specifically, he alleges that while being escorted down the hallway by CO Araiza and Corporal DeLeon "due to an almost altercation with another inmate," CO Araiza "twisted handcuffs on [his] wrist" causing him pain. (ECF No. 10). When he asked CO Araiza why he was twisting the handcuffs, CO Araiza twisted them harder, ultimately resulting in a cut, bleeding, and more pain. (ECF Nos. 10, 14). According to Quintanilla, CO Araiza initially refused to respond to his question but subsequently stated he twisted the handcuffs because Quintanilla was "looking in the window." (ECF No. 14). Quintanilla states the windows in that hallway merely "lead to storage rooms," suggesting CO Araiza's actions were unwarranted. (*Id.*).

Quintanilla claims that during that same escort, Corporal DeLeon "punched [him] on [his] face with enough force to slam [his] head against the wall." (ECF No. 10). He specifies he was struck by Corporal DeLeon on his right eye. (ECF No. 14). According to Quintanilla, the punch resulted in a "very dark black eye for 3 weeks." (*Id.*).

Quintanilla contends that during the alleged assaults by CO Araiza and Corporal DeLeon he was handcuffed at all times and at no time did he attempt to resist the correctional officers or provoke them. (ECF Nos. 10, 14). He claims that during the entirety of these events he did nothing more than ask why he had been assaulted. (ECF Nos. 10, 14).

2

Following the foregoing alleged assaults, Quintanilla contends Sergeant Pratka ordered that he be strapped in a "5 point restraining chair" under an air conditioning vent without a shirt or socks. (ECF No. 10). He claims he remained in the chair for three hours. (ECF No. 10). During that time period he was not permitted out of the chair for restroom breaks, despite requesting breaks, resulting in him being forced to urinate and defecate on himself. (ECF Nos. 10, 14). He claims Sergeant Pratka taunted him when after an hour and a half she returned and saw him sitting in his own feces and urine; she denied his request to use the restroom. (ECF No. 14). After three hours, he was released from the chair and permitted to shower. (*Id.*).

As to the Sheriff, Quintanilla contends he "failed to act when presented with a[n] obvious risk of constitutional harm & constitutional injury," ignoring his complaints about alleged cruel and unusual punishment and conditions of confinement in the ACJ. (ECF Nos. 10, 14). He contends all Defendants acted pursuant to an "unwritten or unofficial policy," so as to impose municipal liability — seemingly as to Atascosa County — and supervisory liability as to the Sheriff. (ECF No. 14).

In response, Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 12); *see* FED. R. CIV. P. 12(b)(6). In their motion and reply to Quintanilla's response, Defendants contend: (1) any claim by Quintanilla based on the Fifth Amendment fails because the Fifth Amendment's protections apply only to actions of federal actors, not the actions of county actors; (2) Quintanilla fails to state a claim against any Defendant in his or her official capacity because he fails to allege an official Atascosa County policy or custom was the moving force behind any of the alleged constitutional violation; (3) Quintanilla's claims against the Sheriff in his individual capacity are not viable under section 1983 because Quintanilla fails to allege the Sheriff was personally involved in the constitutional deprivations

3

alleged, thereby raising nothing more than an improper supervisory claim based on *respondeat superior*; (4) Quintanilla fails to plead sufficient facts to satisfy any element of his excessive force claims against the correctional officers, arguing the absence of: (a) an injury, (b) allegations that the officers' alleged conduct was solely for the malicious and sadistic purpose of causing harm, and (c) allegations to establish the officers' actions were objectively unreasonable; and (5) Quintanilla cannot overcome the defense of qualified immunity. (ECF Nos. 12, 15).

## STANDARD OF REVIEW

Rule 12(b)(6) permits a party to move for dismissal of a compliant for failure to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). When a district court reviews a motion to dismiss pursuant to Rule 12(b)(6), it must construe the complaint in the plaintiff's favor, taking "all well–pleaded facts as true" and asking whether the complaint contains sufficient "facts to state a claim to relief that is plausible on its face." *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016); *see* FED. R. CIV. P. 12(b)(6). The plaintiff's legal conclusions are not entitled to the same assumption and "[t]hreadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Although generally the Court may not look beyond the pleadings, the Court may examine the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claims, as well as matters of public record. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010); *see United States ex rel. Willard v. Humana Health Plan of Tex., Inc.,* 336 F.3d 375, 379 (5th Cir. 2003) (stating that "the court may consider ... matters of which judicial notice may be taken").

4

**ANALYSIS**

### A.  *Fifth Amendment Claims Against Defendants*

Quintanilla alleges Defendants' actions and omissions violated his rights under the Fifth and Fourteenth Amendments. (ECF No. 14). Defendants argue Quintanilla cannot seek recovery under the Fifth Amendment because it does not apply to them as county employees or agents. (ECF No. 15).

The protections of the Fifth Amendment apply only to violations of constitutional rights by the United States or federal actors. *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000); *Wakat v. Montgomery Cnty.*, 471 F. Supp.2d 759, 766 (S.D. Tex. 2007). Defendants are Atascosa County employees, not federal actors. (ECF Nos. 10, 12). Quintanilla has not alleged any of the defendants were acting under authority of the federal government. *See Jones*, 203 F.3d at 880; *Wakat*, 471 F. Supp.2d at 766. Thus, with respect to any claims brought by Quintanilla pursuant to the Fifth Amendment, Defendants' motion to dismiss should be granted and such claims dismissed with prejudice. *See Lopez v. Davis*, No. 6:19-cv-593, 2020 WL 6935560, at *2 (E.D. Tex. Oct. 7, 2020), *report and recommendation adopted*, 2020 WL 6888993 (E.D. Tex. Nov. 24, 2020) (granting defendant's motion to dismiss and dismissing Fifth Amendment claims with prejudice); *McCutchen v. Olivarri*, No. SA-08-CA-48-FB, 2013 WL 12338719, at *13 n.165 (W.D. Tex. Jan. 11, 2013) *report and recommendation adopted*, 2013 WL 12338720 (W.D. Tex. Feb. 21, 2013) (granting defendants' motion for summary judgment and dismissing Fifth Amendment claims with prejudice).

### B.  *Claims Against Defendants in Their Official Capacities*

Quintanilla brought suit against Defendants in their official and individual capacities. (ECF No. 10). Defendants argue that the claims against Defendants in their official capacities must

5

be dismissed because Quintanilla failed to allege the existence of an official Atascosa County policy or custom that was the moving force behind any of the alleged constitutional violations. (ECF Nos. 12, 15).

Quintanilla did not name Atascosa County as a defendant. (ECF No. 10). However, to the extent he purports to sue Defendants in their official capacities, his suit is against Atascosa County, the governmental entity that employs Defendants or the governmental entity the officials represent. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991); *Brooks v. George Cnty., Miss.*, 84 F.3d 157, 165 (5th Cir. 1996). To establish section 1983 liability on the part of a county or municipality, a plaintiff must show (1) an official policy, (2) promulgated by the municipal policymaker, (3) was the moving force behind the violation of a constitutional right. *Hicks–Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir.), *cert. denied*, 138 S. Ct. 510 (2017); *see Spiller v. City of Texas City, Police Dep't*, 130 F.3d 167, 167 (5th Cir. 1997) (holding that "a plaintiff must initially allege that an official policy or custom" caused alleged constitutional deprivations); *see also Bd. of Cnty. Comm'rs Bryan Cnty., Okla.*, 520 U.S. 397, 403–04 (1997); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Quintanilla fails to allege the existence of an official policy, practice, or custom by Atascosa County relating to any of his alleged constitutional deprivations. (ECF Nos. 10, 14). In fact, in Quintanilla's response to the motion to dismiss, he specifically states assaults by correctional officers and improper use of the restraining chair "are an *unwritten* or *unofficial* policy for municipal liability under 1983." (ECF No. 14) (emphasis added). Moreover, Quintanilla's "policy" allegation is conclusory, failing to contain specific facts. (ECF No. 14); *see Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (holding complaint's description of policy or custom cannot be conclusory but must contain specific facts). Quintanilla has, therefore, failed to a claim upon which relief may be granted against Atascosa County. Thus,

6

as to Quintanilla's claims against Defendants in their official capacities, the motion to dismiss should be granted, and Quintanilla's claims dismissed with prejudice.

### C.  Claims Against the Sheriff in His Individual Capacity

As set out above, Quintanilla claims the Sheriff violated his constitutional rights when the Sheriff "failed to act when presented with a[n] obvious risk of constitutional harm & constitutional injury," ignoring his complaints about alleged cruel and unusual punishment and conditions of confinement in the ACJ. (ECF Nos. 10, 14). Defendants contend these claims against the Sheriff are not sustainable under section 1983 because Quintanilla failed to allege the Sheriff was personally involved in the constitutional violations alleged. (ECF No. 12). Therefore, Quintanilla has done nothing more than allege an invalid supervisory claim based on *respondeat superior*. (*Id.*).

Suits brought against a government official in his individual capacity seeks to impose personal liability upon that official for actions taken under color of state law. *See, e.g., Scheuer v. Rhodes*, 416 U.S. 232, 237–38 (1974). To establish personal liability in a section 1983 action, the plaintiff must allege the defendant was personally involved in the actions complained of or is responsible for the policy or custom giving rise to the alleged constitutional deprivation. *See Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (holding that under section 1983, officials are not vicariously liable for conduct of those under their supervision, they are accountable for their own acts and for implementing unconstitutional policies that result in constitutional deprivations); *Jones v. Lowndes Cnty., Miss.*, 678 F.3d 344, 349 (5th Cir. 2012) ("A Section 1983 claimant must 'establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.'").

A supervisor is not personally liable for his subordinate's actions in which he had no involvement.[2] *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008).

Quintanilla does not allege the Sheriff was personally involved in any of the acts or omissions he contends resulted in a violation of his constitutional rights or that *the Sheriff* is responsible for a policy or custom — official or *de facto* — that gave rise to any of the alleged constitutional deprivations. (ECF Nos. 10, 14). As to policy, Quintanilla merely asserts the Sheriff was aware of a policy or custom of assaults and use of restraining chairs. (ECF No. 14). In the absence of an allegation that the Sheriff was personally involved in the alleged constitutional violations or responsible for a policy or custom that gave rise to such constitutional deprivations, Quintanilla has failed to state a claim upon which relief may be granted, mandating the Court grant the motion to dismiss with respect to the claims against the Sheriff in his individual capacity and dismissing such claims with prejudice for failure to state a claim upon which relief may be granted.

To the extent Quintanilla alleges the Sheriff violated his constitutional rights by denying his grievances, this claim also lacks viability under section 1983. (ECF No. 14). Inmates have liberty interests only in "freedom[s] from restraint ... impos[ing] *atypical* and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005) (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)). Inmates *do not* have a federally protected liberty interest in having grievances addressed and resolved to their satisfaction. *E.g., id.* at 374 (holding that prisoner did not have liberty interest, of kind protected

---

[2] There are limited exceptions to this rule, but none apply in this case. *See, e.g., Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 454 (5th Cir. 1994) (en banc) (holding that school officials can be held personally liable if their deliberate indifference allows subordinate to violate student's right to bodily integrity).

by Due Process Clause of Fourteenth Amendment, in having grievance resolved to his satisfaction). Moreover, although an adequate grievance procedure is a condition precedent to filing a suit arising under section 1983, *see* 42 U.S.C.1997e(a), its ineffectiveness or altogether absence does not give rise to a constitutional claim. *Giddings v. Valdez*, No. 06-CV-2384-G, 2007 WL 1201577, at *3 (N.D. Tex. Apr. 24, 2007). Because the handling of grievances does not give rise to a constitutional claim, the Court finds Quintanilla is relying on a legally nonexistent interest for his section 1983 claim against the Sheriff in this respect. *See Geiger*, 404 F.3d at 374.

### D. *Excessive Force Claims — Failure to Allege Sufficient Facts*

In the motion to dismiss, Defendants argue Quintanilla fails to plead sufficient facts to satisfy any element of his excessive force claims against the three correctional officers. (ECF No. 12). Specifically, they argue Quintanilla's allegations are insufficient with regard to injury, whether the officers' conduct was conducted with the malicious and sadistic purpose of causing harm[3], and whether the officers' conduct was objectively unreasonable. (*Id.*).

#### 1. *CO Araiza and Corporal DeLeon*

Quintanilla claims CO Araiza and Corporal DeLeon violated his rights under the Fourteenth Amendment based on their use of excessive force. (ECF Nos. 10, 14). Quintanilla correctly asserts his excessive force claims flow from the Fourteenth as opposed to the Eighth Amendment because he was at the time of the events forming the basis of his claims, and still is, a pretrial detainee. *See Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (holding that rights of person charged with, but not yet convicted of, a crime "flow from both the procedural

---

[3] This is not the proper standard for a pretrial detainee's excessive force claim under the Fourteenth Amendment; rather, it is the standard for a convicted inmate's claim under the Eighth Amendment. *See Kingsley v. Hendrickson*, 576 U.S. 389, 396–98 (2015).

and substantive due process guarantees of the Fourteenth Amendment.").[4] The Supreme Court has recognized that a pretrial detainee's excessive force claim arises under the Fourteenth Amendment and therefore, he need only show the force purposefully and knowingly used against him was objectively unreasonable. *Kingsley v. Hendrickson*, 576 U.S. 389, 396–98 (2015). This is in contrast to an excessive force claim brought by a convicted prisoner who must show the force used against him was subjectively unreasonable, i.e., employed maliciously and sadistically to cause harm. *See id.* (abrogating lower courts' application of Eighth Amendment excessive force standards from *Hudson v. McMillian*, 503 U.S. 1 (1992) to pretrial detainees). The Supreme Court reasoned, in part, that different standards should be employed because pretrial detainees, unlike convicted prisoners, may not be punished. *Id.*

The standard of objective reasonableness cannot be applied mechanically. *Id.* at 397. Rather "objective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The determination is made from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not on hindsight. *Id.* A court must also take into account the legitimate interest in the need to manage the facility and defer to policies and practices that are, in the judgment of jail officials, necessary to preserve order and discipline and maintain security. *Id.* (quoting *Bell v. Wolfish*, 441 U.S 520, 540 (1979)).

In determining whether the force alleged was objectively unreasonable, the Supreme Court provided a list of factors, which are non–exclusive, that a court should consider. *Id.* The factors to

---

[4] A convicted inmate's rights are derived from the Eighth Amendment's prohibition on cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The difference in the origins of rights with regard to convicted inmates and pretrial detainees is based on the fact that a State cannot punish a pretrial detainee.

consider include: (1) the extent of the detainee's injury; (2) the relationship between the need for the use of force and the amount of force used; (3) any effort made by the correctional officer to temper or limit the amount of force used; (4) the severity of any security problem at issue; and (5) the threat reasonably perceived by the correctional officer; and (6) whether the inmate was actively resisting. *Id.* With regard to the first factor, the Court notes that an inmate must have suffered some form of injury that is more than *de minimis*.[5] *See Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). In *Wilkins*, the Court recognized that although the extent of the injury suffered plays a role in an excessive force analysis, i.e., a push or a shove causing no discernible injury almost certainly fails to state a valid excessive force claim, it is the force used "that ultimately counts." *Id.* at 39. However, the Court has specifically faulted any attempt by a court to find the absence of a significant injury dispositive, holding the "core judicial inquiry" following *Hudson* is the nature of the force applies. *Id.* The Supreme Court reasoned an inmate should not lose his ability to pursue an otherwise valid excessive force claim "merely because he has the good fortune to escape without serious injury." *Id.*

Defendants contend Quintanilla failed to plead sufficient facts to support an excessive force claim. (ECF Nos. 12, 15). The Court disagrees with Defendants' characterization of Quintanilla's factual assertions and their legal conclusions based thereon. (ECF Nos. 12, 15). The Court finds Quintanilla's allegations — accepted as true and viewed in the light most favorable to him, as the Court must in evaluating a Rule 12(b)(6) motion — sufficiently state a plausible

---

[5] Section 1997e of Title 42 of the United States Code provides that a confined inmate cannot bring a civil action for a mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act. 42 U.S.C. § 1997e. Quintanilla has not alleged a mental or emotional injury; he has alleged physical injuries. (ECF Nos. 10, 14).

claim for excessive force under the Fourteenth Amendment. *See Barrie*, 819 F.3d at 174; Fed. R. Civ. P. 12(b)(6).

Quintanilla contends that as he was escorted down a jail hallway by the two correctional officers after "an almost altercation with another inmate," CO Araiza "twisted handcuffs on [his] wrist" causing him pain and when he asked why, CO Araiza twisted them even harder. *Id.* As a result, Quintanilla suffered a bleeding cut and additional pain. (ECF Nos. 10, 14). Additionally, Corporal DeLeon "punched [him] on [his] face with enough force to slam [his] head against the wall." (ECF No. 10). The punch resulted in a "very dark black eye" that lasted weeks. (*Id.*). Quintanilla alleges that during these assaults, he was handcuffed at all times and at no time did he attempt to resist the correctional officers or provoke them. (ECF Nos. 10, 14). In sum, Quintanilla claims he did not present any threat to either officer (cuffed and unresisting), the force was excessive to the need because there was no existing security issue at the time of the assaults (only a prior "*almost* altercation" with another inmate), the officers did not temper their use of force, and he suffered physical injuries (bleeding cut on the wrist a severe black eye). (ECF Nos. 10, 14).

The Court finds these allegations, when considered in light of the *Kingsley* factors, weigh in favor of Quintanilla's excessive force claims against CO Araiza and Corporal DeLeon and taken as true, establish for purposes of the Rule 12(b)(6) motion that the officers' actions were not objectively reasonable. *See Kingsley*, 576 U.S. at 397. Defendants point to Exhibit B attached to Quintanilla's response to their motion to dismiss and argue it shows they employed proper force to control "difficult situations" involving Quintanilla. (ECF Nos. 14, Exh. B; 15). The document to which Defendants refer is an Inmate Service Request completed by Quintanilla on June 28, 2020, approximately six weeks after the assaults that form the basis of Quintanilla's excessive

force claims. (ECF No. 14, Exh. B). In that document, Quintanilla complains about being placed in a "separation cell," claiming the placement was based on retaliation. (*Id.*). In response, the Sheriff stated Quintanilla was in a separation cell due to "at least 3 fights" he was involved in and "separation" is used to maintain safety and security of the facility and those within it. (*Id.*). This might show that at some time prior to June 28, 2020, Quintanilla posed a security problem; however, taking Quintanilla's allegations as true as the Court must, there was no security issue requiring use of force at the time of the events underlying this action. (ECF Nos. 10, 14). The document relied upon by Defendants does not include dates for the previous fights in which Quintanilla may have been involved. (ECF No. 14, Exh. B). Therefore, these past events would not weigh in favor of the correctional officers under the factors of need for force and severity of security problem because there is nothing to establish they were temporal with the alleged assaults by the officers.

The injuries resulting from the correctional officers' use of force could be considered minor, a cut on the wrist and a black eye. However, as the Supreme Court has specifically held, the absence of a serious injury alone is not a proper basis for the dismissal of a section 1983 excessive force claim. *Wilkins*, 559 U.S. at 39. The Court finds, on balance, weighing the officers' alleged actions as described by Quintanilla and presuming them to be true, the officers' actions constitute gratuitous force applied to a handcuffed and unresisting detainee during an escort inside the jail that resulted in injuries. There is no indication Quintanilla set the stage for any use of force. (ECF Nos. 10, 14). The Court finds Quintanilla has raised a plausible claim the CO Araiza and Corporal DeLeon used force that was objectively unreasonable for the purpose of causing him harm. *See Kingsley*, 576 U.S. at 397. Thus, Defendants' motion to dismiss must be denied with

regard to Quintanilla's excessive force claims against CO Araiza and Corporal DeLeon in their individual capacities.

  2. _Sergeant Pratka_

Quintanilla contends Sergeant Pratka ordered him confined to a five–point restraint chair for three hours without restroom breaks, resulting in his being forced to sit for hours in his own urine and feces. (ECF Nos. 10, 14). He further claims that halfway through his time in the chair she returned and taunted him as he sat in his own waste. (ECF No. 14). He does not assert that excessive force was used against him when he was placed in the chair or while he was in the chair. (ECF Nos. 10, 14). Liberally construing Quintanilla's pleadings, and contrary to Defendants' interpretation of the claim against Sergeant Pratka as one for excessive force, the Court finds Quintanilla has asserted a Fourteenth Amendment Due Process condition of confinement or episodic act or omission claim not a claim for excessive force.[6] (ECF Nos. 10, 12, 14, 15); *see Hare v. City of Corinth, Miss.*,   74 F.3d 633, 647 (5th Cir. 1996).

The Fifth Circuit distinguishes between civil rights claims involving conditions of confinement and a jail official's episodic acts or omissions. *See Hare*, 74 F.3d at 643. In *Scott v. Moore*, the Fifth Circuit held the category of cases involving condition of confinement claims include instances, for example, where a detainee complains about the number of bunks in a cell or television or mail privileges, i.e., things endemic to the entire prison or jail population. 114 F.3d 51, 53 (5th Cir. 1997) (en banc). The category of cases involving an episodic claim, on the other hand, includes instances where the complained–of harm is a particular act or omission of

---

[6] In their motion to dismiss, Defendants assert that although "unclear," Quintanilla appears to assert Fourteenth Amendment claims for *excessive force* against Defendants in their official and individual capacities. (ECF No. 12) (emphasis added).

one or more officials. *Id.* The Court finds Quintanilla's claim against Sergeant Pratka falls squarely into the latter category as it turns on a single incident where she ordered Quintanilla confined to a restraint chair for three hours. *See id.* However, Defendants failed to address Quintanilla's claim as anything other than an excessive force claim. (ECF Nos. 12, 15). Thus, Defendants' motion to dismiss Quintanilla's claim against Sergeant Pratka based on a failure to plead sufficient facts cannot be granted as the motion fails to address the actual claim asserted by Quintanilla. (ECF Nos. 10, 12, 14, 15).

### E. *Qualified Immunity*

Defendants also assert the correctional officers are entitled to qualified immunity. (ECF No. 12). Qualified immunity has been described as "'an entitlement not to stand trial or face the other burdens of litigation.'" *Staten v. Adams*, 939 F. Supp. 2d 715, 723 (S.D. Tex. 2013) (quoting *Saucier v. Katz*, 533 U.S. 194, 199–200 (2001)), *aff'd*, 615 F. App'x 223 (5th Cir. 2015). Qualified immunity "provides ample protections to all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 511, 526 (1986)). It is a shield from "'undue interference'" with a government official's duties and "'potentially disabling threats of liability.'" *Collie v. Barron*, 747 F. App'x 950, 952 (5th Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)).

Once a defendant pleads qualified immunity, the Court must undertake a two–pronged inquiry. *Tolan v. Cotton*, 572 U.S. 650, 655 (2014) (per curiam). Under the first prong, the Court must determine whether the facts alleged by the plaintiff establish or "make out a violation of a constitutional right." *Darden*, 880 F.3d at 727 (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)); *Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008). The second prong requires the Court to determine whether the defendant's actions were objectively reasonable in light of the law that was

"clearly established" at the time of the alleged constitutional violation. *Darden*, 880 F.3d at 727; *Haverda v. Hays Cnty.*, 723 F.3d 586, 598 (5th Cir. 2013). The Supreme Court and the Fifth Circuit have consistently held that for a defendant pleading qualified immunity to be liable, his conduct must have violated clearly established constitutional rights of which a reasonable person would have known. *See, e.g., Harlow*, 457 U.S. at 818; *Easter v. Powell*, 467 F.3d 459, 462 (5th Cir. 2006). If reasonable officials could differ on the lawfulness of the defendant's conduct, the defendant is entitled to qualified immunity. *Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401, 407–08 (5th Cir. 2007). With regard to the second step, an official's act or omission is objectively reasonable unless all reasonable officials would have realized the particular challenged conduct violated the constitutional provisions at issue, giving ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

  *1. CO Araiza and Corporal DeLeon*

  For the reasons stated in the Court's analysis of Quintanilla's excessive force claims against CO Araiza and Corporal DeLeon, *see supra*, the Court finds Quintanilla has made out a violation of his Fourteenth Amendment right to be free from excessive force for purposes of qualified immunity. *See Darden*, 880 F.3d at 727. Moreover, he has alleged sufficient facts to show CO Araiza and Corporal DeLeon used force that was objectively unreasonable in light of the law that was "clearly established" at the time of the alleged constitutional violation. *See id.*

  Because a finding that CO Araiza and Corporal DeLeon violated Quintanilla's right under the Fourteenth Amendment to be free from excessive force is material to deciding whether they are entitled to qualified immunity, and the Court has found Quintanilla's allegations plausible, their motion to dismiss must also be denied as to their defense of qualified immunity.

2. *Sergeant Pratka*

Because Defendants failed to address Quintanilla's episodic claim against Sergeant Pratka, instead construing it as a claim for excessive force, the Court declined to review the motion to dismiss based on Defendants' contention that Quintanilla failed to allege sufficient facts to state a claim. *See supra*. However, Defendants also alleged Sergeant Pratka was entitled to qualified immunity. (ECF No. 12).

For claims against an individual defendant in an episodic act or omission case, a detainee must show the official acted with subjective deliberate indifference in order to prove a violation of his constitutional rights. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999). Subjective deliberate indifference means "the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." *Id.* (quoting *Hare*, 74 F.3d at 650). Thus, to make out a constitutional violation with respect to the first prong of the qualified immunity defense, Quintanilla had to allege facts showing Sergeant Pratka knew there was a substantial risk he would suffer serious harm. *See Darden*, 880 F.3d at 727; *Olabisiomotosho*, 184 F.3d at 526.

Deliberate indifference may be established by circumstantial evidence, "and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004). A recent Supreme Court decision clarified that the risk posed by exposure to bodily waste is obvious. *See Taylor v. Riojas*, 141 S. Ct. 52, 54 (2020) (per curiam) (overturning *Taylor v. Stevens*, 946 F.3d 211, 219 (5th Cir. 2019)).

Quintanilla alleged Sergeant Pratka ordered that he be strapped in a restraining chair, and he remained in the chair for at least three hours. (ECF Nos. 10, 14). During that time period, he

requested to use the restroom several times, but the correctional officer assigned to watch him advised she did not have "the authority" to release him. (ECF No. 14). As a result, Quintanilla contends he was forced to urinate and defecate on himself. (ECF Nos. 10, 14). After he had been in the chair for an hour and a half, Sergeant Pratka returned and saw Quintanilla sitting in his own waste. (ECF No. 14). According to Quintanilla, when Sergeant Pratka saw this she taunted him and denied his request to use the restroom. (*Id.*). Thereafter, Quintanilla remained in the chair, in his own waste, for another hour and a half. (*Id.*). Taking Quintanilla's allegations as true, as the Court must, Sergeant Pratka knew for at least an hour and a half that Quintanilla was sitting in his own urine and feces. (*Id.*); *see Barrie*, 819 F.3d at 174. Moreover, Quintanilla specifically plead that throughout this incident he never resisted, implying his confinement in the chair without restroom breaks was compelled neither by necessity nor exigency. (ECF Nos. 10, 14); *see Taylor*, 151 S. Ct. at 54. Based on Sergeant Pratka's knowledge, coupled with the Supreme Court's determination that the risk posed by exposure to bodily waste is obvious, the Court finds Quintanilla met the first prong as to qualified immunity, i.e., he made out a constitutional violation. *See Darden*, 880 F.3d at 727; *Olabisiomotosho*, 184 F.3d at 526.

The second prong of the qualified immunity inquiry requires the Court to determine whether the defendant's actions were objectively reasonable in light of the law that was "clearly established" at the time of the alleged constitutional violation. *Darden*, 880 F.3d at 727. Accordingly, the Court must determine whether Sergeant Pratka had "fair warning" that her actions and omissions were constitutionally infirm. *See Hope v. Pelzer*, 536 U.S. 730, 740 (2002).

In *Taylor*, the Fifth Circuit determined prison officials were entitled to qualified immunity because the law was ambiguous as to whether an inmate could be housed in "deplorably unsanitary conditions" for six days, and therefore, officials lacked "fair warning" that their acts of keeping a

18

prisoner in a feces–ridden cell for that length of time were objectively unreasonable. 946 F.3d at 222. The Fifth Circuit found an ambiguity because the case law was unclear as how long a prisoner had to be exposed to unsanitary conditions before a constitutional violation arose. *Id.* In support of its holding, the Fifth Circuit cited a case where no constitutional violation was found when an inmate was housed in such conditions for three days, as well as a Supreme Court case that in *dicta* advised that confinement in a filthy cell might be tolerable for a few days but constitutionally infirm if it continued for weeks or months. *Id.* (citing *Hutto v. Finney*, 437 U.S. 678, 686–87 (1979)). The Supreme Court rejected the finding of an ambiguity based on decisional law regarding an inmate's *time* of exposure to unsanitary conditions, citing authority that holds a general constitutional rule previously identified in case law may "apply with obvious clarity," such as the prohibition of exposing an inmate to the "obvious cruelty inherent" in placing inmates in certain wantonly "degrading and dangerous situations." *Taylor*, 141 S. Ct. at 53–54 (quoting *Hope*, 536 U.S. at 745; *United States v. Lanier*, 520 U.S. 259, 271 (1997)).

The Fifth Circuit has long recognized that certain prison conditions are so inhumane and barbaric, they violate the Constitution. *See Novak v. Beto*, 453 F.2d 661, 665 (5th Cir. 1971). One such condition is the deprivation of basic hygiene, including access to a toilet. *Palmer v. Johnson*, 193 F.3d 346, 352–53 (5th Cir. 1999). In *Palmer*, the Fifth Circuit recognized a constitutional violation where an inmate was deprived of a sanitary way to relieve himself for seventeen hours. *Id.* at 352. Even in *Taylor*, the Fifth Circuit acknowledged the existence of a factual dispute as to the existence of a constitutional violation where prison officials refused to escort an inmate to the restroom for twenty–four hours. 946 F.3d at 225.

Here, the allegations taken as true, establish that Quintanilla, despite repeated requests, was denied access to a toilet for a period of approximately three hours. (ECF Nos. 10, 14). After he

soiled himself, he was forced to sit in his own filth for at least an hour and a half. (ECF No. 14). Quintanilla's allegations imply there was no necessity or exigency relating to this deprivation. (ECF Nos. 10, 14). Accordingly, the Court finds the general constitutional rule that an inmate should not be made to endure degrading situations, such as being denied access to a toilet for so long that he is forced to soil himself and unnecessarily sit in his waste for hours, applies "with obvious clarity" to Sergeant Pratka's conduct in this case. *See Taylor*, 141 S. Ct. at 53–54 (citing *Hope*, 536 U.S. at 741). To conclude that Sergeant Pratka's lacked "fair warning" that her conduct in denying Quintanilla access to a restroom and forcing him to sit in his own waste for an hour and a half to three hours, as opposed to seventeen or twenty-four hours, would be to commit the very error identified by the Supreme Court in *Taylor*. *See id.* Accordingly, the Court finds Sergeant Pratka had "fair warning" at the time of the alleged constitutional violation that her actions in forcing Quintanilla to be restrained and unnecessarily kept in his own filth was violative of his rights under the Fourteenth Amendment to be free from a degrading and unsanitary condition. *See Darden*, 880 F.3d at 727. The Court finds that at this time under the strictures of Rule 12(b)(6), Sergeant Pratka is not entitled to dismissal based on qualified immunity as to Quintanilla's episodic claim.

CONCLUSION

Based on the Court's review and analysis, it finds Defendants' motion to dismiss should be granted in part and denied in part. Specifically, with regard to Quintanilla's Fifth Amendment claims, official capacity claims, and claims against the Sheriff in his individual capacity, the motion to dismiss should be granted. However, the motion should be denied with respect to Quintanilla's excessive force claims against CO Araiza and Corporal DeLeon and his episodic claim against Sergeant Pratka.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (ECF No. 12) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Quintanilla's Fifth Amendment Claims against Defendants are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Quintanilla's claims against Defendants in their official capacities are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Quintanilla's claims against Defendant Atascosa County Sheriff David Soward in his individual capacity is **DISMISSED WITH PREJUDICE**.

Quintanilla's claims of excessive force against Defendants Correctional Officer Luis Araiza and Corporal Kenneth DeLeon in their individual capacities remain pending, as does his episodic claim against Defendant Sergeant Cathryn Pratka in her individual capacity.

It is so **ORDERED**.

**SIGNED** this 18th day of May, 2021.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE